FILED'09 JUL 15 14:26 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GAYLE A. BOATWRIGHT,

     Plaintiff,

          v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Commission,

     Defendant.

Civil No. 08-0150-CL

**Report & Recommendation**

CLARKE, Magistrate Judge.

Plaintiff Gayle A. Boatwright ("Plaintiff") brings this action pursuant to 42 U.S.C. §

405(g) to obtain judicial review of the Commissioner's final decision denying Plaintiff's claim

for Social Security Disability Insurance (SSDI) benefits.  For the several reasons set forth below,

the decision of the Commissioner should be affirmed.

## I.    Background

Plaintiff was born on September 2, 1957, and alleges disability beginning on April 20,

2001, due to the combined disorders including hepatitis C, depression, colitis, arthritis, and

Report & Recommendation - 1

resulting pain. (Pl.'s Br. 2.) She was 49 years old on the date last insured for disability benefits.

Plaintiff has a degree in mechanical engineering and worked for the high-tech industry for twenty-four years. (Tr. 173.) She was diagnosed with hepatitis C in November 2000. (Tr. 18.) Plaintiff stopped working in April 2001 and explained that this was due to limitations caused by her medical condition. (Tr. 173; Pl.'s Br. 2.) Plaintiff also briefly went back to work in July 2001 for two weeks. (Tr. 18.) From August 2005 till September 2006, Plaintiff worked as a babysitter for a family member for approximately eight hours per week. (Tr. 18.) She also worked on a part-time, but unpaid, basis for her husband's trucking company. (Tr. 18.)

Plaintiff believes she contracted hepatitis C during a medical class in college when students practiced with re-used needles. (Tr. 174; Pl.'s Br. 3.) Plaintiff explained that she developed a reaction to a treatment for her condition. She suffers from symptoms of vomiting; problems with vision; balance and hearing; easy bruising; and sensitivity in her fingertips leading to the loss of fingernails. (Tr. 174.)

Plaintiff saw Dr. Kim Webster for a consultative evaluation on November 24, 2004. Dr. Webster reviewed Plaintiff's records, including the chart notes from her primary care physician.[1] (Tr. 169.) In her assessment, Dr. Webster diagnosed, "[h]epatitis C without any evidence that it is causing any problems. . . .[s]ubjective description of pain and decreased range of motion of her fingers with absolutely a normal examination. Because of this, I would say there is no objective evidence for restrictions in standing, walking, sitting, lifting, or carrying, and there is no

---

[1] Dr. Melanie J. Smythe was Plaintiff's primary care physician at the time of this examination. Dr. Smythe's records were not included in the Plaintiff's record as compiled by the Social Security Administration, and the reason for that is unclear. (See Pl.'s Br. 5.) As no other primary care physician is noted in the record, the Court assumes Dr. Webster reviewed Dr. Smythe's records of the Plaintiff.

Report & Recommendation - 2

objective need for postural, manipulative, or environmental restrictions." (Tr. 172.)  Dr. Webster

described "extraordinarily poor effort" in her findings of Plaintiff's motor strength/muscle bulk

and tone. (Tr. 170-171.)

Plaintiff saw psychologist Dr. Jane Starbird on February 3, 2005, for a comprehensive

psycho-diagnostic exam/report. (Tr. 173.)  Dr. Starbird diagnosed her with Depressive Disorder,

NOS. (Tr. 177.)  Dr. Paul Rethinger, a state agency psychologist, reviewed the file and agreed

that Plaintiff had Depressive Disorder, NOS, in his evaluation dated February 24, 2005.  (Tr.

188.)  He did not find, however, that she had more than mild functional limitations as a result of

her depression.  (Tr. 189.)  Also in February 2005, Dr. Mary Ann Westfall  reviewed Plaintiff's

file and concluded that she had no established exertional, postural, manipulative, visual,

communicative, or environmental limitations.  (Tr. 179-186.)

Plaintiff, on the recommendation of her primary care physician Dr. Smythe, saw Dr. Wai

L. Lee on November 3, 2006, for an initial evaluation for her arthralgias. (Tr. 204.)  Dr. Lee

found some mild findings of osteoarthritis but no obvious signs of synovitis.  He explained,

"[h]epatitis C can also cause arthralgias; however, her complaints of joint discomfort seem to be

to some extent out of proportion to the findings of osteoarthritis or that can be explained by

hepatitis C." (Tr. 204.)  Dr. Lee examined Plaintiff on a follow-up visit on January 11, 2007, and

concluded "it is less likely that she has rheumatoid arthritis and it is more likely that her

rheumatoid factor is accounted by her hepatitis C." (Tr. 229.)  Also at this visit, he suggested

occupational therapy for rehabilitation, but Plaintiff deferred and stated that she had previously

seen a therapist and knew of the exercises. (Tr. 229.)   On January 23, 2007, Dr. Lee completed a

questionnaire regarding Plaintiff's condition, as requested by Plaintiff's attorney.  He was careful

to clarify his responses and his treating relationship with the Plaintiff: "[p]hysical capacities listed are extrapolated from patient's physical exam. My role as patient's rheumatologist is to help diagnose/clarify diagnosis and help her treat her condition, not to determine disability." (Tr. 228.)

Dr. Lee opined that Plaintiff had certain physical limitations. Plaintiff can occasionally lift and/or carry a maximum of 10 pounds and frequently lift and/or carry less than 10 pounds. She can stand and/or walk less than an hour at a time. (Tr. 226.) She is never to reach in all directions or finger as to fine manipulation. (Tr. 227.) He also opined that her symptoms would likely increase if she were placed in competitive employment. (Tr. 228.)

Plaintiff saw Dr. Atif Zaman on December 20, 2006, and February 22, 2007, at her primary care physician Dr. Smythe's referral. Dr. Zaman ordered a colonoscopy and liver biopsy. (Tr. 215.) Dr. Zaman reported that her colonoscopy showed inflammation of the intestines, and therefore he diagnosed colitis. Dr. Zaman explained to the Plaintiff that the colitis likely explained her diarrhea and intestinal burning. (Tr. 231.) Dr. Zaman also stated that he did not think that Plaintiff's joint complaints were related to hepatitis C; however, he did posit that Plaintiff may have cryoglobulinemia, which may be associated with hepatitis C and can cause joint problems. (Tr. 215.) He noted that he would perform a cryoglobulin screen to rule it out. There was no further mention of this condition in the record.

Plaintiff protectively filed her application for a period of disability and disability insurance benefits on February 19, 2004. Her claim was denied initially on May 13, 2004, and upon reconsideration on March 1, 2005. Plaintiff appeared and testified at a hearing on February 8, 2007, at which time a vocational expert also testified. The Administrative Law Judge ("ALJ")

issued her unfavorable decision on June 28, 2007, and the Appeals Council denied Plaintiff's request for review on December 14, 2007. (Tr. 5). Plaintiff timely filed her claim with this Court on February 4, 2008. (Pl.'s Compl. 1.)

## II.    Standards

This Court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court considers the record as a whole and weighs "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's conclusion must be upheld. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by findings on the record and supported by substantial evidence. Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Under

sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## III.    Commissioner's Decision

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).  In the present case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of April 20, 2001, through her last insured date of December 31, 2006.  (Tr. 18.)

In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  If the Commissioner finds no medically severe impairment, the claimant is deemed not disabled.  If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three.  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520©), 416.920©).  Here, the ALJ found that Plaintiff had the following severe

Report & Recommendation - 6

impairments: hepatitis C, mild; and osteoarthritis. (Tr. 18.) Accordingly, the inquiry moved to step three.

Step three focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141. In this case, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or equals one of the listed impairments. (Tr. 21.)

In step four, the Commissioner determines whether the claimant has the residual functional capacity (RFC) to perform his "past relevant work." 20 C.F.R. § 404.1560(a). The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments. SSR 96-8p. "Past relevant work" refers to work that "was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). It does not consider "off-and-on" work during that period. Id. If she can perform past relevant work, then the Commissioner finds the claimant "not disabled." If the claimant cannot perform past relevant work, the inquiry advances to step five. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The ALJ found that the Plaintiff has the following exertional and nonexertional limitations:

> the claimant had the residual functional capacity to perform light exertion work activity. She is able to lift 20 pounds occasionally and 10 pounds frequently. She is able to sit for 6 hours in an 8-hour day. She is able to stand and/or walk for 6

hours in an 8-hour day.

(Tr. 21.)  The ALJ found, "[t]hrough the date last insured, the claimant's past relevant work as

design engineer and a mechanical engineer did not require the performance of work-related

activities precluded by the claimant's residual functional capacity."  (Tr. 24.)  She could perform

past relevant work.

If the claimant can perform past relevant work, then she is not disabled, and the

Commissioner concludes at that step.  To complete the record and give a full review, however,

the ALJ continued to step five, even though she determined that Plaintiff can perform past

relevant work. (Tr. 25.)

In step five, the burden is on the Commissioner to establish that the claimant is capable of

performing other work that exists in the national economy.  <u>Yuckert</u>, 482 U.S. at 141-42; 20

C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this burden, then the

claimant is deemed disabled.  Here, the ALJ determined that there are jobs that exist in

significant numbers in  the national economy that the Plaintiff can perform, in addition to past

relevant work.  (Tr. 25.)  She determined that the Plaintiff was not disabled from April 20, 2001,

through December 31, 2006, the date last insured.  (Tr. 25.)

## IV.    Discussion

Plaintiff asserts that the ALJ's decision should be reversed and remanded for benefits

because it is not supported by substantial evidence and because it is based on the application of

improper legal standards.  Plaintiff argues that:

> (1)    the ALJ has not met her duty to fully and fairly develop the record.

> (2)    the ALJ improperly rejected the opinion of treating physician Dr. Wai L. Lee.

(3)    the ALJ improperly rejected the lay witness evidence of Plaintiff's husband, Mr.

Brady Boatwright.

### A.    The ALJ Fully and Fairly Developed the Record

Plaintiff argues that the ALJ did not meet her duty to fully and fairly develop the record

and as a result, remand is appropriate. (Pl.'s Br. 12.)  The Defendant argues that the record

"contained neither insufficient nor ambiguous evidence to determine Plaintiff was not disabled."

(Def. Br. 6.)

"'In Social Security cases the ALJ has a special duty to fully and fairly develop the record

and assure that the claimant's interests are considered.'  This duty exists even when the claimant

is represented by counsel."  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting

Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); 20 C.F.R. § 416.1444.

Remand may be necessary when the record does not contain relevant facts and history to

assist the ALJ to fairly make her decision.  "In deciding whether a remand is the proper remedy,

we have stated that where the administrative record contains gaps, remand to the Commissioner

for further development of the evidence is appropriate.  That is, when 'further findings would so

plainly help to assure the proper disposition of [the] claim, we believe that remand is particularly

appropriate.'"  Butts v. Barnhart, 388 F.3d 377, 385-86 (2nd Cir. 2004) (quoting Rosa v.

Callahan, 168 F.3d 72, 83 (2nd Cir. 1999)).  In Thorne v. Califano, the court remanded the case

because there was no opinion evidence as to whether Thorne was employable in the year in

question. 607 F.2d 218, 220 (8th Cir. 1979).  Remand has also been appropriate when the

evidence is ambiguous or the ALJ finds that the record is inadequate for a proper evaluation.

Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen, 80 F.3d at 1288).

Report & Recommendation - 9

Here, the Plaintiff argues that the ALJ did not obtain the medical record from her primary care physician, Dr. Smythe. Plaintiff asserts, "[t]his case cannot properly be evaluated without the records of this important doctor. That the ALJ's decision was based on such an incomplete record indicates that this is not a decision based upon substantial evidence." (Pl.'s Br. 12.) Plaintiff explains that she cannot develop or complete her own arguments for disability without these records and that the ALJ's arguments are equally incomplete and unreliable for the same reason. (Pl.'s Br. 12.)

The ALJ did, however, have medical records and evidence from medical professionals specializing in the areas for which Plaintiff alleged disability. There was substantial evidence in the record on which the ALJ could base her decision, despite the omission of Dr. Smythe's files. Plaintiff asserted disability based on joint discomfort, digestive problems, and hepatitis C, and the ALJ consulted medical records from specialists who evaluated her on these impairments. The Plaintiff's record, which the ALJ used and to which the Plaintiff had access, included files from her rheumatologist Dr. Lee, digestive health specialist Dr. Zaman, her primary care clinic Kaiser Permanente, and Dr. Webster who provided a consultative examination.

Plaintiff has not shown that there are any gaps in her medical or treatment history that suggests her record is incomplete with the absence Dr. Smythe's records. It is clear from Dr. Webster's, Dr. Zaman's notes, and Dr. Lee's notes that they at least consulted Dr. Smythe's records or communicated with her. Dr. Webster began her report, "We have some chart notes from her primary care physician showing she has hepatitis C." (Tr. 169.) Dr. Zaman addressed a letter to Dr. Smythe and thanked her for the referral. (Tr. 214.) Dr. Lee saw Plaintiff at Dr. Smythe's referral and reviewed her records as part of his evaluation. (Tr. 203.) It is not irrational

for the ALJ to rely on these doctors' notes and interpretations of Dr. Smythe's records, especially since none of the doctors suggested that they found something that was different from or conflicted with Dr. Smythe's records or that they disagreed with her.

The ALJ fully and fairly developed the record. The record contains relevant facts and history about Plaintiff's condition as it relates to her alleged impairments, and the ALJ had sufficient evidence on which to base her decision.

### B.      The ALJ Did Not Improperly Reject Dr. Lee's Opinion

Plaintiff argues that the ALJ improperly rejected Dr. Lee's opinion by failing to provide clear and convincing reasons, and she asserts that Dr. Lee's opinion regarding her sedentary limitations should be credited as a matter of law. (Pl.'s Br. 13, 16.) The Defendant argues that the ALJ applied the proper weight to the opinion. (Def.'s Br. 6.)

Controlling weight will be given to a treating physician's opinion on the issues of the nature and severity of a claimant's impairment(s) if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).   "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)); 20 C.F.R. §§ 404.1527(e), 416.927(e); see also Montijo v. Secretary of HHS, 729 F.2d 599, 601 (9th Cir. 1984).

If the ALJ does not find that the treating physician's opinion warrants "controlling weight," under 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), the ALJ evaluates several factors to

determine the weight to give the opinion.  These include (1) the length of the treatment

relationship and the frequency of the examination, (2) the nature and extent of the treatment

relationship, (3) supportability of the opinion with evidence in the record, (4) consistency of the

opinion with the record on a whole, (5) the specialization of the physician as it relates to the

subject of the opinion, and (6) other factors brought to the ALJ's attention.  20 C.F.R. §

404.1527(d)(2)-(6).

     If the ALJ chooses to disregard a treating physician's or an examining physician's

opinion, and that opinion is not contradicted by another doctor, she must set forth clear and

convincing reasons for doing so.  Lester, 81 F.3d at 830; Magallanes, 881 F.2d at 751; Gallant v.

Heckler, 753 F.2d 1450, 1454 (9th Cir. 1984).  If a treating or examining physician's opinion is

contradicted by that of another doctor, the ALJ must set forth specific and legitimate reasons,

based on substantial evidence in the record, for disregarding the opinion of the treating or

examining physician.  Lester, 81 F.3d at 830-31; Nguyen v. Chater, 100 F.3d 1462, 1466, (9th

Cir. 1996).  The ALJ can meet this burden by setting out a detailed and thorough summary of the

facts and conflicting medical evidence, then stating his interpretation, and lastly making findings.

Cotton, 799 F.2d at 1408; Rodriguez, 876 F.2d at 762.  "The opinion of a nonexamining

physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion

of either an examining physician *or* a treating physician."  Lester, 81 F. 3d at 831.

     Plaintiff argues that when the ALJ did not include Dr. Lee's functional limitations in her

hypothetical to the vocational expert, she improperly rejected his opinion.  She also appears to

argue that Dr. Lee's opinion was not contradicted and thus the ALJ can only disregard his opinion

by giving clear and convincing reasons: "Dr Lee[,] Plaintiff's treating arthritis specialist, opined

Report & Recommendation - 12

that his patient had some very specific functional limitations which were never presented to the VE." (Pl.'s Br. 13.) The hearing transcript reveals that the ALJ did not present a hypothetical that included limitations of reaching overhead or predominantly sedentary work, although it appears there was a discussion of fine manipulation tasks. (Tr. 305.) There were no hypotheticals regarding limitations to climb, balance, stoop, kneel, crouch, or crawl as Dr. Lee declined to evaluate the Plaintiff's abilities. (Tr. 227.)

 The Court disagrees with the Plaintiff; the ALJ did not improperly reject the opinion and did give it appropriate weight. The ALJ found that Dr. Lee's opinion was contradicted by another doctor, requiring her to only give specific and legitimate reasons to disregard the sedentary restrictions. The ALJ found that Dr. Lee's opinion "sharply contrasted" with those of Dr. Webster and other state agency doctors. (Tr. 24.) While Dr. Lee opined that the Plaintiff needed sedentary restrictions, Dr. Webster noted that there was "no objective evidence for restrictions in standing, walking, sitting, lifting, carrying, and there is no objective need for postural manipulative, or environmental restrictions." (Tr. 23, 172.) Similarly, Dr. Westfall, who provided a residual functional capacity assessment, found that Plaintiff had no established exertional, postural, manipulative, visual, communicative, or environmental limitations. (Tr. 179-184.) Dr. Westfall explained her perception of Plaintiff's symptoms:

> Claimant indicates in ADL's, she had signifi[cant] limitations in daily living, but does light housework, occa[sional] cooking, occa[sional] shopping. She has limited use of her hands/arms due to a blood [disorder], she said she was diagnosed with, but there is no records of any blood disease. She does own grooming, angers easily, gets confused, can walk 100 yards. Uses aspirin, no other drug treatment. Unable to drive in unfamiliar places. Occa[sionally] visits relatives. In CE's, claimant alleges unable to use her hands, but CE noted multiple inconsistencies throughout the exam, and she was observed using her hands with no problems. CE found no physical disabilities, noted credibility problems, as

Report & Recommendation - 13

was observed by ny [sic] analyst.  Statements are at best partially credible.

(Tr. 184.)

The ALJ provided several reasons to disregard part of Dr. Lee's testimony that were specific and legitimate, and the reasons also explain why she afforded this treating doctor's opinion less than controlling weight.  See 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2).  The ALJ explained, "[a]s a treating medical doctor, Dr. Lee's opinions deserve significant consideration, but the treatment records from Dr. Lee and other physicians fail to reveal such severe limitations that the claimant is reduced to sedentary work."  (Tr. 24.)

First, Dr. Lee's treating relationship with the Plaintiff was limited.  He had only seen her twice at the time of the evaluation, and he clearly explained that his role was not to determine disability but to treat her arthritis.  He pointedly declined to evaluate various physical limitations sought in the questionnaire.  (Tr. 24, 226-28.)  The ALJ determined that his assessment was based on "subjective reports without any objective corroboration."  (Tr. 24.)  She did not find Dr. Lee's report to be descriptive or entirely helpful:  "[it] was vague and does not give information regarding many of the specific limitations."  (Tr. 24.)

The Plaintiff argues that Dr. Lee's opinion should be credited and is based on "his taking of a clinical history and upon physical examination of the patient."  (Tr. 228; Pl.'s Br. 14.)  Plaintiff relies on Embrey v. Bowen, 849 F.2d 418 (9thCir. 1988), and explains "it is improper for th ALJS [sic] to reject a doctor's opinion on the grounds that the doctor fails to list the objective criteria underlying his opinion."  (Pl.'s Br. 15.)  In Embrey, the court explained, "in a case where the medical opinions of the physicians differ so markedly from the ALJ's, it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding

the physicians' findings." Id. at 422.

Unlike Embrey where the ALJ disregarded three treating doctors opinions for his own, here at least two doctors commented that the Plaintiff required no restrictions, and the ALJ agreed. The ALJ has also provided more than her own conclusion of the evidence to support her decision.

Second, the ALJ noted that Dr. Lee's opinions were not supported by the record and were not consistent with other evidence. How his opinion "contrasted sharply" has already been discussed. Morever, Dr. Lee's opinion in January 2007 was inconsistent with his previous November 2006 opinion. Dr. Lee wrote in November, "her complaints of joint discomfort seem to be to some extent out of proportion to the findings of osteoarthritis or that can be explained by her hepatitis C." (Tr. 204.) In January, however, Dr. Lee did not discuss his earlier impression regarding the proportionality of her discomfort or give reasons for why his impression changed.

The ALJ gave Dr. Lee's opinion "very little weight in determining the claimant's residual functional capacity" and her decision is rational and supported by substantial evidence, including Dr. Lee's limited treating relationship with the Plaintiff, his reluctance to answer fully the questionnaire regarding physical limitations, and his opinion's inconsistencies with the medical record. Parts of Dr. Lee's opinion were also contradicted by other medical evidence. Accordingly, the ALJ gave specific and legitimate reasons for disregarding this in her hypothetical to the vocational expert.

### C.    The ALJ Did Not Improperly Reject Mr. Brady Boatwright's Testimony

Plaintiff argues that the ALJ rejected lay witness Mr. Brady Boatwright's testimony for unsupportable reasons. (Pl.'s Br. 16.) The Commissioner will consider non-medical sources to

evaluate the severity of the impairment, such as testimony from spouses and other family

members.  20 C.F.R. § 404.1513(d)(4).

> When the claimant indicates that pain is a significant factor of his/her alleged
> inability to work, and the allegation is not supported by objective medical
> evidence in the file, the adjudicator shall obtain detailed descriptions of daily
> activities by directing specific inquiries about the pain and its effects to the
> claimant, his/her physicians from whom medical evidence is being requested, and
> other third parties who would be likely to have such knowledge.

SSR 88-13 at *3.   In Sprague v. Bowen, the court found that testimony of claimant's daughter

and friend is fully competent to substantiate the doctor's diagnosis.  The court concluded,

"[d]isregard of this evidence violates the Secretary's regulation that he will consider observations

by non-medical sources as to how an impairment affects a claimant's ability to work. . . .

Descriptions by friends and family members in a position to observe a claimant's symptoms and

daily activities have routinely been treated as competent evidence." 812 F.2d 1226, 1232 (9th Cir.

1987) (citing 20 C.F.R. § 404.1513(e)(2)).

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take

into account, unless he or she expressly determines to disregard such testimony and gives reasons

germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (citing

Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996)).  In evaluating lay witness opinions, "it

would be appropriate to consider such factors as the nature and extent of the relationship,

whether the evidence is consistent with other evidence, and any other factors that tend to support

or refute the evidence." SSR 06-03p at *6.

In Greger v. Barnhart, the court affirmed the ALJ's decision to reject lay witness

testimony.  The ALJ concluded that the witness statements were inconsistent with claimant's

presentations to his doctors and noted the witness's "close relationship," which may have influenced her desire to help the claimant. The court concluded, "[t]he ALJ's reasons for doubting [the witness's] credibility are germane to her; accordingly, it was not error for the ALJ to disregard her testimony." 464 F.3d 968, 972 (9th Cir. 2006).

However, the court in Dodrill v. Shalala clarified that lay witness testimony has its place in the ALJ's decision when the witness can provide independent observations:

> [t]hat the ALJ dismissed all the lay witness testimony solely because he found that the claimant was not credible suggests he may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms. . . . An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some wait. If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.

12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff asserts that Mr. Boatwright's testimony corroborates other evidence in the record and is consistent with medical evidence. (Pl.'s Br. 16.) "His statements further support Dr. Starbird's suspicion that this may be a somatoform disorder case, as he attested to many mental and cognitive impairments." (Pl.'s Br. 17.)

The ALJ found this testimony less useful: "[I] have found the lay testimony to be of limited use in the evaluation of the claimant's residual functional capacity." (Tr. 23.) The ALJ properly evaluated his testimony by considering the "nature and extent of relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p at *6.

The ALJ explained that Mr. Boatwright's testimony was inconsistent with other evidence

in the record and was not supported by evidence. The ALJ references Dr. Webster and state agency physicians who determined that there was no objective evidence for restrictions. (Tr. 23-24.) The ALJ also questioned the severity of Plaintiff's symptoms and Mr. Boatwright's perception of them because her medical records do not reveal an aggressive treatment regimen or pain management strategy. Plaintiff was taking only aspirin for her pain as Dr. Westfall noted, she was pursuing only limited treatment for bowel-related problems, and she declined to begin occupational therapy for joint discomfort. There was no evidence of any mental health treatment which might include anti-depressant or psycho-tropic medications or counseling. (Tr. 20.)

The ALJ also found Mr. Boatwright's assertion of Plaintiff's limitations to be inconsistent with her daily activities. In completing the SSA's Function Report Adult - Third Party form, Mr. Boatwright selected every option possible of ways to describe the limitations' affect on the Plaintiff. (Tr. 129.) He identified the following activities that were affected: lifting, squatting, bending, standing reaching, walking, sitting, kneeling, talking, hearing, seeing, memory, stair-climbing, using hands, completing tasks, concentration, understanding, following instructions, getting along with others. (Tr. 129.) Yet, Mr. Boatwright also reported that Plaintiff performed basic activities of caring for plants, shopping, cooking, and paying bills. (Tr. 124-32.)

The Plaintiff finds error in many of the ALJ's reasons for disregarding the testimony. First, she reminds the court that lay witnesses have a unique view of a claimant on a daily basis and should not be discredited for the reason that they are not professionally trained. (See Pl.'s Br. 16-17; Pl.'s Reply 5.) In addition, in some circumstances, the ALJ must solicit evidence of daily activities when pain allegations are not supported by the objective medical evidence in the file. SSR 88-13 at *3. A lay person is not required to have the same experience as a vocational

expert: "[a] lay person, [claimant's spouse], though not a vocational expert, [is] not disqualified from rendering an opinion as to how [his spouse's] condition affects [her] ability to perform basic work activities." Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009).

The Plaintiff argues that the ALJ's reasons to disregard Mr. Boatwright's statements are legally unsupportable. (Pl.'s Br. 16.) She argues that her daily activities should not be used to discredit her because disability claimants are not required to "be totally unable to engage in any form of mental or physical activity." (Pl.'s Br. 18.) See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

However, the ALJ may cast doubt on Plaintiff's symptoms because of her daily activities. While the ALJ cannot "require claimants to be utterly incapacitated to be eligible for benefits," it "would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working" when the claimant is able to perform activities that involve many of the same physical tasks as a particular job. Fair, 885 F.2d 597, 603.

The Plaintiff also suggests that the ALJ was in error to disregard Mr. Boatwright's testimony because he is not a trained vocational expert. Indeed, the ALJ did state, "Mr. Boatwright is not trained to critically evaluate whether the claimant's complaints are exaggerated or inconsistent with objective evidence. In addition, he has no demonstrated vocational expertise necessary to support a conclusion the claimant is unable to work." (Tr. 23.)

The ALJ's statement about the lay witness's lack of vocational expertise does not negate her other specific and germane reasons for disregarding this witness's testimony. In describing the inconsistencies and setting forth other evidence to support her decision of Plaintiff's limitations, the ALJ based her decision on substantial evidence that should not be disturbed.

Report & Recommendation - 19

That the ALJ preferred the "more reliable evidence of record from examining medical professionals who are trained to evaluate impairments and their impact on functional capacity," is not irrational. (Tr. 23.)

## V.  Conclusion

The ALJ's decision is based on the proper legal standards and is supported by substantial evidence.  The ALJ fully and fairly developed the record and assured that the Plaintiff's interests were considered, even in the absence of Dr. Smythe's records.  She provided specific and legitimate reasons for disregarding part of Dr. Lee's opinion and properly evaluated the relevant factors to give it appropriate weight.  Lastly, she properly rejected Mr. Boatwright's lay witness testimony by giving specific and germane reasons, in that his testimony was inconsistent with the record and not supported by medical evidence.  The ALJ's decision should be affirmed.

## VI.  Recommendation

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be affirmed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by **August 3, 2009**.  If objections are filed, any responses to the objections are due within 10 days, see* Federal Rules of Civil Procedure 72 and 6.  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of

Report & Recommendation - 20

fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___*15*___ day of July, 2009.


_____
MARK D. CLARKE
United States Magistrate Judge